WILLIAMS v LITTON SYSTEMS, INC

Docket No. 87885. Submitted April 21, 1987, at Detroit. Decided
November 2, 1987. Leave to appeal applied for.

Sandra E. Williams, administratrix of the estate of Robert N.
Williams, deceased, brought an action in the Wayne Circuit
Court against Litton Systems, Inc., and others alleging that
Robert Williams' death was due to Litton's negligence in de-
signing, manufacturing and supplying the storage system
within which Williams was killed and in failing to warn him of
foreseeable dangers in working in the area. The complaint also
contained allegations of breach of express and implied warran-
ties and strict liability against Litton. Litton filed a third-party
complaint against Ford Motor Company, decedent's employer,
seeking indemnity under theories of implied contractual liabil-
ity and common-law indemnity for failing to submit the dece-
dent for training provided by Litton and by allowing him to
enter the storage system with the lockout system shut off. The
trial court, William J. Giovan, J., denied Ford's motion for
summary judgment. Ford sought leave to appeal, which was
denied. The Supreme Court, in lieu of granting leave to appeal,
remanded to the Court of Appeals to consider the case as on
leave granted. 422 Mich 976 (1985).

The Court of Appeals *held:*

1. A trial court, in determining whether a party to a tort
action is entitled to common-law indemnity, must consider the
primary plaintiff's complaint; and, where the complaint alleges
active rather than passive negligence, the party is not entitled
to common-law indemnity. Since the primary complaint alleged
only active negligence, the court erred in denying summary
judgment on the common-law indemnity claim.

2. Recovery under an implied contract of indemnity is not
available to a party who is not free from active negligence.
Litton's claim that it was not actively negligent is a defense to
plaintiff's complaint and should not be allowed in a third-party

REFERENCES

Am Jur 2d, Indemnity §§ 6 *et seq.*; 28 *et seq.*
See the annotations in the Index to Annotations under Indemnity.

claim for implied contractual indemnity, since the primary complaint alleges only active negligence.

3. Ford should have been granted summary judgment on the breach of implied warranty of workmanlike service claim since nothing in the pleadings suggested that Ford, as a potential indemnitor, was performing a service for Litton pursuant to a contract at the time of the injury.

4. There is no comparative indemnity in Michigan.

Reversed and remanded.

1. INDEMNITY — CONTRACTS — COMMON LAW.

A right to indemnity can arise from three possible sources: the common law, an implied contract, or an express contract.

2. INDEMNITY — COMMON-LAW INDEMNITY — NEGLIGENCE — TORTS.

A trial court, in determining whether a party to a tort action is entitled to common-law indemnity, must consider the primary plaintiff's complaint, and where the complaint alleges active rather than passive negligence the party is not entitled to common-law indemnity.

3. INDEMNITY — IMPLIED CONTRACT OF INDEMNITY — ACTIVE NEGLIGENCE.

Recovery under an implied contract of indemnity is not available to a party who is not free from active negligence.

4. INDEMNITY — IMPLIED CONTRACT OF INDEMNITY — PLEADING.

A defendant in a tort action who seeks to disprove his own active negligence should do so against the plaintiff who brought the claim, not against a third-party defendant in an action for implied contractual indemnity, where the original complaint alleges no vicarious liability.

5. APPEAL — PRESERVING QUESTION — QUESTIONS OF LAW.

An issue not raised in the trial court is generally precluded from appellate review; however, if the question is one of law and all of the facts necessary for its resolution have been presented, the Court of Appeals may review the claim.

6. INDEMNITY — CONTRACTS — IMPLIED WARRANTIES.

A tortfeasor may not receive indemnification on a theory of liability based upon breach of an implied warranty of workmanlike service where the party from whom indemnification is sought was not, at the time of injury, performing a service for the party seeking indemnification pursuant to a contract which required that service.

7. INDEMNITY — COMPARATIVE INDEMNITY.
   There is no doctrine of comparative indemnity in Michigan.

*Barbier, Petersmarck, Tolleson, Mead & Paige, P.C.* (by *George E. Petersmarck* and *Vincent J. Brennan*), for defendant.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Richard A. Kitch* and *Mark D. Willmarth*), and *John M. Thomas,* for third-party defendant Ford Motor Company.

Before: J. B. SULLIVAN, P.J., and MacKENZIE and R. M. DANIELS,* JJ.

J. B. SULLIVAN, P.J. Third-party defendant Ford Motor Company appeals as on leave granted upon order of the Michigan Supreme Court from a denial of summary disposition by the Wayne Circuit Court. We reverse.

This case arises from the alleged wrongful death of Ford employee Robert N. Williams on January 26, 1979. On that date, Williams, during his employment, entered the third level of a high density robotic storage area to investigate a malfunction in the storage system, when he was struck from behind and crushed by a transfer vehicle. A complaint on behalf of his estate was filed against, among others, defendant-third party plaintiff, Unit Handling Systems Division of Litton Systems, Inc. The complaint alleged that Litton was negligent in designing, manufacturing and supplying the storage system and in failing to warn the decedent of foreseeable dangers in working within the storage area. The complaint also contained various allegations of breach of express and implied warranties and strict liability against Litton.

* Circuit judge, sitting on the Court of Appeals by assignment.

Prior to trial, Litton filed a third-party complaint against Ford. Litton sought indemnification from Ford in the event Litton was found liable to the decedent's estate. Trial was then conducted on the primary action and, after Litton was found to be liable for negligence and breach of implied warranty, a $10,000,000 verdict was awarded against Litton. The parties subsequently entered into a settlement agreement in which they stipulated that Litton did not admit negligence, breach of warranty or the propriety of the jury verdict or the judgment.

After the circuit judge certified the judgment agreed upon by the parties, Litton filed an amended third-party complaint more specifically seeking indemnification against Ford under the theories of implied contractual indemnity and common-law indemnity. Litton alleged that Ford breached its contractual agreement by failing to submit the decedent for training programs provided by Litton and by allowing the decedent to enter the storage system when the lockout system was off.

On July 14, 1984, Ford moved for summary judgment on the basis that Litton failed to state a claim upon which relief could be granted. Upon the trial court's denial of the motion, this appeal ensued.

Michigan jurisprudence recognizes three sources of a right to indemnity: the common law, an implied contract and an express contract. *Skinner v D-M-E Corp,* 124 Mich App 580, 584; 335 NW2d 90 (1983). This case involves the first two theories.

Ford asserts on appeal, as it did below, that it is entitled to summary judgment because the principal complaint alleged only active negligence against Litton. Indeed, it has been held on numerous occasions that a party may not seek indemnity

under common law where the primary complaint alleges active, rather than passive, liability. See, e.g., *Feaster v Hous,* 137 Mich App 783, 787-788; 359 NW2d 219 (1984). As the primary complaint here alleged only active negligence on the part of Litton, Litton was not free to seek common-law indemnity against Ford. That part of the third-party complaint should therefore have been dismissed. *Cutter v Massey-Ferguson, Inc,* 114 Mich App 28, 32; 318 NW2d 554 (1982).

In addition to common-law indemnity, Litton sought recovery under the theory of implied contractual indemnity. It has been said that, to sustain such a cause of action against an employer, the manufacturer must prove "a specific undertaking by the employer to perform some act or service for the manufacturer and an attempt by the employee of the employer to hold the manufacturer liable for the failure to perform the act which the employer had obligated itself to do." *Grayson v Chambersburg Engineering Co,* 139 Mich App 456, 461; 362 NW2d 751 (1984). However, it is likewise the case that indemnification under this theory is, as under common law, not available to a party who is proven to be actively negligent in causing the plaintiff's injury. *Id.,* p 462; *Skinner, supra,* p 585. Accordingly, where the primary complaint is void of allegations of vicarious or derivative liability against the third-party plaintiff, implied contractual indemnity is also precluded. *Hadley v Trio Tool Co,* 143 Mich App 319, 331; 372 NW2d 537 (1985).[1]

---

[1] Litton contends that the Supreme Court opinion of *Dale v Whiteman,* 388 Mich 698; 202 NW2d 797 (1972), should be read for the proposition that an implied contract of indemnity may be found in the alternative situation where the indemnitee is without personal fault *or* where the potential indemnitor was better situated to reduce the risk of injury. The same argument was considered and flatly rejected in *Hadley.* See also *Langley v Harris Corp,* 413 Mich 592, 599-600, n 4; 321 NW2d 662 (1982).

Under this authority, our analysis might appear to end here. However, the trial court denied summary judgment and, citing the case of *Hill v Sullivan Equipment Co,* 86 Mich App 693; 273 NW2d 527 (1978), held that Litton was entitled to continue discovery. In *Hill,* the manufacturer and designer of a screw conveyor was sued for injuries sustained by an individual whose arm was caught in the conveyor. The manufacturer filed a third-party complaint for indemnification against the individual's employer, alleging that the employer rejected the original design, which included a protective cover, and insisted on installation of the machine without the cover. Given these allegations, the *Hill* majority concluded that summary judgment in favor of the employer should have been denied.

Although *Hill* has been criticized as erroneously holding that freedom from active fault is not a prerequisite for a successful claim for implied contractual indemnity,[2] it was recently cited with approval for the alternative proposition that where, in the unique situation that the allegations of the third-party complaint, if proven, establish that the sole cause of plaintiff's injury was the negligence of the third-party defendant, then the third-party plaintiff should be given an opportunity to prove that it was free of active fault. *Kirin v Riise Engineering Co, Inc,* 148 Mich App 278, 284; 384 NW2d 149 (1986), lv den 426 Mich 867 (1986). See also *Reed v St Clair Rubber Co,* 118 Mich App 1, 10; 324 NW2d 512 (1982).

Litton, citing *Hill* and *Kirin,* contends that it similarly should be given the opportunity to prove, as alleged, that it was without active negligence

---

[2] See, e.g., *Skinner, supra, Feaster, supra,* and *Johnson v Bundy,* 129 Mich App 393; 342 NW2d 567 (1983).

and that the decedent's injuries were caused solely and proximately by the negligence of Ford.

Unfortunately, the law of indemnification is highly complicated and hardly a model of clarity. Nonetheless, at the expense of adding to the confusion, we are constrained to conclude that *Hill* and *Kirin* were wrongly decided and we decline to follow this line of authority.

As stated earlier in this opinion, the primary plaintiff alleged that Litton was negligent and breached its warranty in designing, manufacturing, and supplying a storage system not reasonably safe for its intended use and was negligent in failing to warn decedent of foreseeable dangers. In its third-party complaint, Litton alleged that the system was designed, manufactured and supplied in a reasonably safe condition, and further averred that decedent's death was caused by Ford's negligence in allowing decedent's presence within the storage system while the lockout system, supplied by Litton, was not in operation and without submitting him to training provided by Litton. Litton has asserted, in essence, that it was not negligent and, therefore, should be entitled to indemnification from Ford, whose negligence was the sole and proximate cause of decedent's death. If this position had been sustained by the evidence at the trial on the primary complaint (which it was not), then Litton would have won a judgment of no cause of action in its favor and the indemnity action would not have been necessary. On the other hand, if decedent were to win a judgment (not superseded by a settlement agreement), it would have been premised on Litton's active negligence and Litton would not have been entitled to indemnity against the employer. By settling with the decedent's estate and bringing the third-party complaint prior to the entry of an adverse judg-

ment by the trial court, Litton has attempted to obtain indemnification where it would otherwise have been impossible.[3] Nonetheless, in the third-party complaint, Litton has merely alleged a complete defense to the original action, rather than a basis for implied contractual indemnification. *Diekevers v SCM Corp*, 73 Mich App 78, 81; 250 NW2d 548 (1976); *Minster Machine Co v Diamond Stamping Co*, 72 Mich App 58, 63-64; 248 NW2d 676 (1976). Where there are no allegations of vicarious liability and a primary defendant seeks to disprove his own active negligence, he should do so against the primary plaintiff who brought the claim.[4] The denial of summary judgment as to the claim for implied contractual indemnification is therefore vacated.

We can summarily dispose of the two remaining issues discussed in the parties' briefs.

The first of these issues is whether Litton al-

---

[3] A determination whether the jury's verdict of negligence on the part of Litton in the primary case has collateral estoppel effect in the instant third-party case is unnecessary. The disposition of this case on the motion for summary judgment was not dependent upon a prior judgment of liability against Litton, but rather upon the contents of the primary plaintiff's complaint, which contained only allegations of active negligence against Litton. *Parliament Construction Co v Beer Precast Concrete, Ltd,* 114 Mich App 607, 612; 319 NW2d 374 (1982).

[4] Due to the requirement that a party seeking implied contractual indemnification be free from active fault, it appears that in most cases a manufacturer-seller of a product will be unable to seek such indemnification from an employer-purchaser because the duties owed by each to the employer's employees are distinct. While manufacturers owe duties not to introduce defective products into the market, employers owe duties to reasonably supervise employees who operate dangerous machinery and to further provide these employees with adequate instruction and precaution. Even if an employer breaches a promise with a manufacturer to submit employees to training programs involving the product or to take some other precautionary measure, the manufacturer's liability will still result from its own active negligence, thereby precluding the opportunity for indemnification. See *McPike v Die Casters Equipment Corp,* 504 F Supp 1056, 1065 (WD Mich, 1980). Cf., *Skinner, supra,* and *Grayson, supra,* where manufacturers'-sellers' potential liability for breach of warranty was passive in nature.

leged a cause of action for breach of an implied warranty of workmanlike service against Ford. Although Ford did not raise this issue below, nor with this Court until it filed its reply brief, we nonetheless choose to address it because the question is one of law and all the facts necessary for its resolution have been presented. *Balogh v City of Flat Rock,* 152 Mich App 517, 520; 394 NW2d 1 (1985). After reviewing the pleadings, we are persuaded that summary judgment should have been granted dismissing this claim also because nothing in the pleadings suggests that Ford, as the potential indemnitor, was, at the time of the injury, performing a service for Litton pursuant to a contract which required that service. *Ingram v Interstate Motor Freight Systems,* 115 Mich App 559, 568-569; 321 NW2d 731 (1982).

Finally, Litton invites this Court to adopt and apply to this case the doctrine of comparative indemnity. Pursuant to the dictates of *Downie v Kent Products, Inc,* 420 Mich 197; 362 NW2d 605 (1984), reh den 421 Mich 1202 (1985), we decline to do so.

Reversed and remanded.